IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DANNY SALAZAR-RUIZ,**

**Plaintiff**,

v.

**JEFF COX, et al.,**

**Defendants**.

Case No. 24-4052-DDC-GEB

<u>**MEMORANDUM AND ORDER**</u>

The briefs in this case reveal very little about the underlying dispute. But the court can

glean this much from them: plaintiff Danny Salazar-Ruiz was arrested in Cass County, Missouri,

on charges of trespass. He posted bond. And later, the prosecutor dropped the charges. Then,

plaintiff filed his Complaint against four defendants: Judge Jeff Cox, Cass County Prosecuting

Attorney Ben Butler, Assistant Cass County Prosecuting Attorney Jessica Gieseke, and

Missouri's 17th Judicial Circuit.[1] His Complaint invokes a laundry-list of federal statutes—but

his claims largely are incomprehensible. He alleges very few facts. At bottom, though, he

appears to claim defendants violated his constitutional rights during his criminal trespass case in

Cass County, Missouri. And he seeks to recover more than $23 million in damages for these

alleged wrongs. Doc. 1 at 5 (Compl. ¶ IV).

---

[1]     Judge Cox and the 17th Judicial Circuit weren't served within 90 days of plaintiff filing his Complaint. *See* Doc. 36 at 1. Magistrate Judge Birzer gave plaintiff until October 28, 2024, to perfect service of process on these two defendants. *Id.* And Judge Birzer ordered plaintiff to show cause why she shouldn't dismiss defendants Judge Cox and the 17th Judicial District from this case. *Id.* at 2. The show cause hearing was held on December 10, 2024. Doc. 54. The claims against those two defendants weren't addressed in the briefing and aren't addressed in this Order.

Now, defendants Butler and Gieseke have filed a Motion to Dismiss for Failure to State a Claim (Doc. 14). And plaintiff has filed a Motion to Strike (Doc. 21),[2] which responds to the Motion to Dismiss and asks the court to enter a default judgment. *See generally* Doc. 21. Plaintiff then filed a document he titled "Judicial Notice," which functioned as a response to defendants' reply brief, also known as a surreply. *See generally* Doc. 30. So, defendants responded in kind, filing their own Motion to Strike (Doc. 29) plaintiff's surreply. The court takes up each motion, below.

Because plaintiff appears pro se, the court construes his pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court can't assume the role of plaintiff's advocate. *Id.* And plaintiff's pro se status doesn't excuse him from "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* Simply put, the court can't "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997). The court begins with the case's blink-and-you'll-miss-it background.

## I.    Background

Plaintiff alleges he was detained unjustifiably three times. *First*, his "initial arrest." Doc. 1-2 at 3. *Second*, "when [he] was violated while traveling in the State of Missouri." *Id.* And

---

[2] Plaintiff asked the court to strike defendants' Motion to Dismiss (Doc. 14), Memorandum in Support of Motion to Dismiss (Doc. 15), Motion to Stay Discovery (Doc. 16), Memorandum in Support of Motion to Stay Discovery (Doc. 17), and Diversity Jurisdiction Statement (Doc. 19). Doc. 21 at 1. Magistrate Judge Birzer already granted defendants' Motion to Stay Discovery (Doc. 16). *See* Doc. 34. And plaintiff offers no reason why the court should strike defendants' Diversity Jurisdiction Statement (Doc. 19). *See generally* Doc. 21. Plaintiff also fails to offer any reason to strike defendants' Motion to Dismiss (Doc. 14). Instead, plaintiff's arguments attempt to rebut defendants' grounds for dismissal. So, the court construes these arguments as a response to defendants' Motion to Dismiss, not a request to strike that motion.

*third*, "when [he] was found in contempt of court for refusing to contract with the State." *Id.* Plaintiff says these "detainment[s]" "led to [his] coerced plea of not guilty" and "multiple court room visits . . . as a Special Appearance." *Id.* Plaintiff also alleges that defendants "withheld the electronic correspondence" about his "in person special appearance before the court to find a civil resolution." *Id.*

Plaintiff attached several documents to his Complaint.[3] From them, it appears that plaintiff was released on bond for his trespassing charge. Doc. 1-5 at 2. And defendants then dropped the charges. *See id.* at 1. Plaintiff appears to challenge defendants' conduct on constitutional grounds. *See below* § II.B (attempting to pin down plaintiff's causes of action). That's just about everything the court knows about plaintiff's claims. So, with that limited background, the court begins with a few preliminary matters.

## II.    Preliminary Matters

Before addressing defendants' Motion to Dismiss, the court takes up four issues. *First*, whether the court must enter default against defendants. *Second*, what causes of action plaintiff

---

[3]      Defendants moved to dismiss under Rules 12(b)(2), (3), and (6). *See* Doc. 14 at 1. Defendants also present a sovereign immunity defense challenging the allegations in the Complaint. Doc. 15 at 4–6. If sovereign immunity applies, it deprives the court of subject matter jurisdiction. *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009). So, while defendants didn't invoke Rule 12(b)(1), the court can consider their sovereign immunity argument using that standard. *See Davis v. California*, No. 17-2125-JAR-JPO, 2017 WL 4758928, at *1 (D. Kan. Oct. 20, 2017) (construing Rule 12(b)(6) motion seeking dismissal based on sovereign immunity as a Rule 12(b)(1) motion).

The court properly treats "[e]xhibits attached to a complaint . . . as part of the pleadings for purposes of ruling on a motion to dismiss." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (applying rule on a 12(b)(6) motion). And this rule applies to motions to dismiss under 12(b)(6) and facial attacks under 12(b)(1). *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010) (treating facial 12(b)(1) challenges under the "same standards" as a 12(b)(6) motion to dismiss); *Allergan, Inc. v. Revance Therapeutics, Inc.*, No. 21-1411-RGA, 2022 WL 2866723, at *3 (D. Del. July 21, 2022) (noting that on a 12(b)(1) facial attack, the court considers allegations in complaint and documents attached to complaint). All that to say, the court properly considers documents attached to the Complaint here when ruling defendants' Motion to Dismiss.

asserts. *Third*, whether plaintiff sues defendants in their individual or official capacities. And *fourth*, whether the court must strike plaintiff's surreply. These matters influence the court's analysis of defendants' Motion to Dismiss, so the court resolves them first.

### A.    Plaintiff's Request for a Default Judgment

Plaintiff opposes defendants' Motion to Dismiss because, he asserts, it is "only meant to stall litigation." Doc. 21 at 2. And, because defendants didn't file an answer to the Complaint, plaintiff asks the court to enter a default judgment. *Id.* at 10. The court may enter default against defendants who have "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).[4] Ordinarily, defendants have 21 days after service to file an answer. Fed. R. Civ. P. 12(a)(1)(A). But in lieu of an answer, defendants may file a Rule 12(b) motion to dismiss. A Rule 12(b) filing postpones defendants' answer deadlines. Fed. R. Civ. P. 12(a)(4). If defendants later must answer, those answers are due 14 days after the court denies the motion to dismiss. *Id.*

Here, defendants moved to dismiss under Rules 12(b)(2), (3), and (6). *See* Doc. 14 at 1. And the court rules the Motion to Dismiss in this Memorandum and Order. So, defendants' answers aren't due yet. And defendants aren't in default. The court thus denies plaintiff's request for a default judgment against defendants. *See Robles v. Amarr Garage Doors*, 509 F. App'x 741, 743–44 (10th Cir. 2013) (affirming order denying request for default judgment because defendant filed responsive pleading under Rule 12(b)); *Sipple*, 2023 WL 8761232, at *1 (denying request for default judgment for same reason).

---

[4]    Rule 55 also requires a plaintiff to follow certain procedures before the court may enter a default judgment. *See* Fed. R. Civ. P. 55(b); *see also Sipple v. Meyer*, No. 23-4108-EFM, 2023 WL 8761232, at *1 (D. Kan. Dec. 18, 2023) (explaining two-step process to secure default judgment). Plaintiff here hasn't followed those procedures. So, the court couldn't enter a default judgment in any event.

### B.     Plaintiff's Claims

In his Complaint, plaintiff has cited a catalog of unrelated statutes, cases, doctrines, and maxims.  As best the court can tell, plaintiff challenges defendants' conduct under the following federal statutes and regulations:  18 U.S.C. § 3571 (imposing a fine as a sentence); 18 U.S.C. § 241 (criminal conspiracy against rights statute); 18 U.S.C. § 242 (criminal statute for deprivation of rights under color of law); 22 C.F.R. pt. 92 (foreign relations notarial acts).  *See* Doc. 1 at 3 (Compl. ¶ II.A.).  He also aspires to bring claims under UCC 1-308 and UCC 3-603.[5] *Id.*  Splattered at random throughout plaintiff's Complaint are a number of other statutes and regulations.  The court won't list them all here, but they include the Florida Administrative Code, the Administrative Procedure Act, the Americans with Disabilities Act, and the Dodd-Frank Act—to name a few.  *See generally* Doc. 1-2.  Plaintiff also cites a number of cases about regulatory takings and searches and seizures.  *See id.* at 2.  He doesn't explain his allegations under these various statutes, regulations, or legal doctrines.

At bottom, though, plaintiff appears to allege defendants violated his constitutional rights. *See id.* at 3 (describing his "[u]njustified detainment" and "coerced plea of not guilty").  Claims against state governmental officials for constitutional violations fall under 42 U.S.C. § 1983.[6] And indeed, plaintiff off-handedly cites § 1983 in his Complaint.  *See* Doc. 1-2 at 7, 10.[7]  So,

---

[5]      Plaintiff also mentions UCC 502, something that isn't a thing.  *See* Doc. 1 at 3 (Compl. ¶ II.A.). There's no provision numbered 502 in the Uniform Commercial Code.

[6]      "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding[.]"  42 U.S.C. § 1983.

[7]      Plaintiff's response to the Motion to Dismiss also explains that "[f]alse arrest, illegal detention (false imprisonment) and malicious prosecution are recognized as [causes] of action under title 42 section 1993."  Doc. 21 at 5.  Because plaintiff cites *Sanders v. English*, 950 F.2d 1152 (5th Cir. 1992)—a case addressing § 1983 claims—the court assumes he intended to reference § 1983.

construing plaintiff's Complaint liberally—and absent direction from plaintiff—the court concludes he means to assert § 1983 claims.[8]  *See* Doc. 15 at 6 (defendants implying that plaintiff makes § 1983 claims); Doc. 36 at 1 (Magistrate Judge Birzer's Notice and Order to Show Cause mentioning that plaintiff alleges defendants committed constitutional violations).

### C.    Individual or Official Capacity Suit

Plaintiff does his best to assert his claims.  But his Complaint isn't clear about the capacity in which he sues defendants—as officers of the state or as individuals.  Defendants present arguments turning on the distinction between the two.  So, the court must discern whether plaintiff sues defendants in their personal capacities, official capacities, or both.

Plaintiff identifies defendants Butler and Cox in the case caption according to their job titles.  Doc. 1 at 1.  Defendants argue that, as a consequence, the court should construe plaintiff's Complaint as seeking relief from defendants solely in their official capacities.  Doc. 15 at 5.  Where plaintiff doesn't designate expressly "the nature of the suit" and "identifies the defendants solely according to their job titles, the court must presume that the officials have been sued in their official capacities."  *See Love v. Hayden*, 757 F. Supp. 1209, 1212 (D. Kan. 1991).  But here, unfortunately, it's just not that simple.  The caption merely informs—it's not dispositive. *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993); *Zinn v. Prison Health Servs., Inc.*, No. 95-2429-JWL, 1996 WL 377084, at *1 (D. Kan. June 27, 1996) (concluding the *Love* job-title-means-official-capacity presumption is contrary to Tenth Circuit precedent).  Instead, courts "look to the substance of the pleadings and the course of the proceedings in order to determine

---

[8]        Perhaps plaintiff tried to achieve these ends by citing 18 U.S.C. § 242.  *See* Doc. 1 at 3 (Compl. ¶ II.A.).  That statute authorizes penalties on anyone who "under color of any law . . . willfully subjects any person in any State . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States[.]"  18 U.S.C. § 242.  But that's a criminal statute and doesn't establish a private right of action.  *See id.*

whether the suit is for individual or official liability." *Pride*, 997 F.2d at 715.  In an abundance

of caution, the court concludes plaintiff has sued defendants in both their official and individual

capacities.  Here's why.

Plaintiff's Complaint suggests he asserts individual capacity claims.  After all, plaintiff

seeks damages.  Doc. 1 at 5 (Compl. ¶ IV).  Under the Eleventh Amendment, damages aren't

available in official capacity suits.  *Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012).

What's more, in response to defendants' Motion to Dismiss, plaintiff appears to describe

qualified immunity.  *See* Doc. 21 at 5–6.  Qualified immunity isn't available in an official

capacity action.  *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985).  So, liberally construed,

plaintiff's damages request and response on qualified immunity grounds suggest plaintiff brings

individual capacity claims.

But the pleadings also suggest plaintiff asserts some official capacity claims.  Plaintiff

identifies defendants by their titles.  *See* Doc. 1 at 2 (Compl. ¶ I.B.).  And his limited description

of defendants' conduct focuses solely on their roles as officers of the state.  *See* Doc. 1-2 at 3.

*But see Pride*, 997 F.2d at 715 n.2 (recognizing that "the capacity in which a defendant is sued"

and "the capacity in which the defendant was acting when the alleged deprivation of rights

occurred" aren't always the same (quotations cleaned up)).  But plaintiff also identifies

defendants by name.  Doc. 1 at 2 (Compl. ¶ I.B.); *see Craft v. Townsend*, No. 23-1081-JAR-

GEB, 2023 WL 5351161, at *4 (D. Kan. Aug. 21, 2023) (concluding plaintiff had asserted both

individual and official capacity claims in part because he identified defendants "both by name

and by their official titles").  Liberally construing plaintiff's pleadings, the court assumes these

two defendants are sued in both their personal and official capacities.  *See also Kinney v. Holder*,

No. 11-4176-JTM, 2012 WL 1136438, at *1 (D. Kan. Apr. 4, 2012) (construing pro se plaintiff's

complaint "as liberally as possible" to conclude pro se plaintiff sued defendants in their official and individual capacities).  Now, on to the last of the preliminary matters.

### D.    Defendants' Motion to Strike Plaintiff's Surreply (Doc. 29)

Defendants have asked the court to strike plaintiff's surreply (Doc. 28).[9]  Their argument is three-fold:  *First*, plaintiff didn't request leave of court to file a surreply; *second*, he didn't argue he had good cause to file a surreply; and *third*, defendants' reply didn't tee up grounds for a surreply.  Doc. 29 at 2–3.  Plaintiff responds, but only somewhat.  Plaintiff filed what he calls "Motion for Discovery in Lieu of Facts, Summary Judgment—Judicial Notice[.]"[10]  *See* Doc. 30 at 1.  But in this "motion," plaintiff asserts he is "not seeking leave of court" to file a surreply. *Id.* at 2 (quotation cleaned up).  He argues that "arguments raised in the corresponding reply may not be accompanied by new evidence.  No new evidence was presented, just the reiteration and [monologues] in lieu of the judicial powers and what governs."  *Id.*  Once again, the court agrees with defendants—plaintiff's surreply is improper.

When a party files a dispositive motion, the opposing party may submit one response and the movant may submit one reply.  D. Kan. Rule 7.1(c); *Taylor v. Sebelius*, 350 F. Supp. 2d 888,

---

[9]       The docket styles plaintiff's surreply as "Response to Reply to Motion to Dismiss for Failure to State a Claim AND Notice, Consent, and Reference of a Dispositive Motion to a Magistrate Judge[.]"

The "Notice, Consent, and Reference of a Dispositive Motion to Magistrate Judge" portion of this filing appears to request that Judge Birzer rule dispositive motions.  *See* Doc. 28 at 4.  But before a magistrate judge decides dispositive motions under 28 U.S.C. § 636(c)(1), all parties must transmit their consent to the clerk's office.  Fed. R. Civ. P. 73(b)(1); D. Kan. Rule 72.1.3(a)(4).  Plaintiff hasn't followed that procedure.  And in any event, all the parties haven't agreed to this course of action.  *See* Fed. R. Civ. P. 73(a) (requiring all parties to consent).  So, the court disregards this part of plaintiff's brief.

[10]      It's designated as just "Judicial Notice" on the docket.  To the extent plaintiff's filing asks the court to enter summary judgment in his favor, the court denies that request.  *See* Doc. 30 at 2–3.  To preview the rest of this Order, the court grants defendants' Motion to Dismiss.  Because the court does so, plaintiff's "motion" for summary judgment is moot.  *See Davis*, 2017 WL 4758928, at *6 (denying motion for summary judgment as moot because court granted motion to dismiss).

900 (D. Kan. 2004). That's generally it. Courts typically don't allow surreplies. *Taylor*, 350 F. Supp. 2d at 900. And when courts do allow them, the party hoping to file a surreply must seek leave to do so. *Id.* Courts give leave in "rare circumstances[,]" like when "a movant improperly raises new arguments in a reply." *Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998) (quoting *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1341 (D. Kan. 1997)). These rules "assist the court" by identifying "when briefed matters are finally submitted and [minimize] the battles over which side should have the last word." *Id.* (internal quotation marks and citation omitted).

Here, plaintiff never sought the court's leave to file a surreply. Plaintiff titles his surreply as "Equitable Lien." Doc. 28 at 1. And in that filing, he never shows why the court should allow him to file a surreply. What's more, defendants' reply brief in connection with their Motion to Dismiss didn't raise any new arguments. *See generally* Doc. 27. It just addressed deficiencies in plaintiff's response and reiterated arguments raised earlier.[11] *See generally id.* Those aren't grounds for granting plaintiff leave to file a surreply. *See Humphries*, 1998 WL 982903, at *1 (reserving leave for "rare circumstances" like raising new arguments in reply (quotation cleaned up)). And they certainly don't provide grounds to allow a surreply without leave, even for a pro se plaintiff. *See Mack v. J.M. Smuckers Co.*, 631 F. Supp. 3d 1018, 1022 (D. Kan. Sept. 29, 2022), *aff'd*, 2023 WL 5217705 (10th Cir. Aug. 15, 2023) (striking pro se plaintiff's improper surreply because court was "unaware of any circumstances, such as new arguments or new evidence advanced by defendants in their reply briefs, that would warrant filing a surreply in this

---

[11]    Defendants' reply brief did argue that plaintiff's response violates the page limitations in D. Kan. Rule 7.1(d)(3). Doc. 27 at 1–2. But even if the court construed this argument as new material warranting a surreply, plaintiff didn't address the page limit argument in his surreply. *See generally* Doc. 28. The court decides whether to strike plaintiff's response for exceeding the page limit, below. *See* note 13.

case" (quotation cleaned up)). And, even if the court considered plaintiff's surreply, its ruling on the Motion to Dismiss would stay the same. *See Taylor*, 350 F. Supp. 2d at 900 n.14 (explaining result wouldn't change if court considered surreply). In sum, plaintiff's surreply arguments don't move the needle. So, the court strikes plaintiff's Response to Reply to Motion to Dismiss (Doc. 28).[12]

With those four preliminary matters resolved, the court moves next to the substance of defendants' Motion to Dismiss.

## III.    Defendants' Motion to Dismiss (Doc. 14)

Defendants argue the court should dismiss plaintiff's claims for a host of reasons. Namely, they argue the court lacks personal jurisdiction over defendants; sovereign and prosecutorial immunity apply; plaintiff failed to comply with Fed. R. Civ. P. 8(a); and the District of Kansas is an improper venue. *See generally* Doc. 15.[13] The court addresses several of these asserted reasons for dismissal, below.

---

[12]    Plaintiff also has filed multiple incomprehensible documents that aren't styled as motions. *See* Doc. 35 ("Bill of Discussion"); Doc. 39 ("Legatee Doctrine to show Cause in wit Lis Pendens"). Plaintiff hasn't sought leave to provide more briefing on the Motion to Dismiss or Motion to Strike. To the extent plaintiff's documents respond to those motions, the court doesn't evaluate them.

[13]    Defendants also ask the court to strike plaintiff's response (Doc. 21) entirely. Doc. 27 at 1. D. Kan. Rule 7.1(d)(3) permits responses of 15 pages. Defendants note that plaintiff's brief is 19 pages. Doc. 27 at 1; *see generally* Doc. 21. Plaintiff, though he proceeds pro se, is obligated to familiarize himself with the local rules and abide by them. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (citing authority that plaintiff's pro se status didn't relieve him from duty to follow Federal Rules of Civil and Appellate Procedure); *Smith v. Jones*, 606 F. App'x 899, 901 (10th Cir. 2015) (same). But on motions to dismiss, our court previously has evaluated pro se briefing that exceeds the page limits. *See Craft*, 2023 WL 5351161, at *6 n.50 (considering plaintiff's response that exceeded the page limit by more than 10 pages). The court follows suit here. Plaintiff proceeds pro se, his filing exceeds the page limit by just a few pages, and those pages don't change the court's conclusions. The court exercises its discretion and declines to strike plaintiff's response.

### A.      Lack of Personal Jurisdiction

Defendants argue that the court doesn't have personal jurisdiction over them.  That's because, they argue, plaintiff alleges conduct that occurred solely in Missouri and there's no constitutional method for Kansas's long-arm statute to capture these defendants.  Doc. 15 at 6–7.  The court addresses this jurisdictional issue first.  *See Walker v. THI of New Mexico at Hobbs Ctr.*, 801 F. Supp. 2d 1128, 1140 (D.N.M. July 6, 2011) ("When a defendant couples a 12(b) motion to dismiss for lack of personal jurisdiction with other issues, the court must first determine the jurisdictional issue."  (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998)).  The court can't issue merits-based rulings on the other issues without jurisdiction over defendants.  *OMI Holdings*, 149 F.3d at 1090.  So, the court begins with the relevant legal standard for personal jurisdiction.

Plaintiff carries the burden to establish personal jurisdiction.  *Id.* at 1091.  At the motion to dismiss stage, "plaintiff need only make a prima facie showing of personal jurisdiction" to shoulder his burden.  *Id.*  Plaintiff can do this by "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *Id.*  To "defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  The court must accept as true plaintiff's allegations—that is, at least ones that aren't contradicted by sworn statements—and resolve factual disputes in plaintiff's favor.  *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007) (reviewing district court's dismissal for lack of personal jurisdiction); *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020) (same).

To determine if the court has personal jurisdiction over defendants, it "must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal quotation marks and citation omitted).

### 1.    Federal Statutes and Jurisdiction

Fed. R. Civ. P. 4(k) allows service of process to establish personal jurisdiction in three situations. Just one applies here: service establishes personal jurisdiction when defendants are subject to the jurisdiction of courts in the state where the district court is located. Fed. R. Civ. P. 4(k)(1)(A).[14]

Rule 4(k)(1)(A) directs the court to the Kansas long-arm statute, Kan. Stat. Ann. § 60-308(b), using it to evaluate whether these defendants are subject to jurisdiction in Kansas courts. *See* Fed. R. Civ. P. 4(k)(1)(A); *Trujillo*, 465 F.3d at 1217 (identifying that New Mexico's long-arm statute authorizes jurisdiction over nonresident defendant if that jurisdiction is consistent with Due Process). Courts construe the Kansas statute liberally to permit any exercise of

---

[14]    Neither of the other grounds under Rule 4(k) apply. Plaintiff invokes both, but he fails to show how either establishes personal jurisdiction over these defendants.

Rule 4(k)(1)(B) authorizes personal jurisdiction for parties joined under Rules 14 or 19 that are served within 100 miles of the forum court. But plaintiff largely omits that this mechanism applies only when parties are joined under Rules 14 or 19. *See* Doc. 21 at 3–4. Because that rule concerns just third-party defendants and joined parties, it doesn't confer personal jurisdiction on these defendants. *See* Fed. R. Civ. P. 14; Fed. R. Civ. P. 19.

Rule 4(k)(1)(C) authorizes personal jurisdiction when provided by a federal statute. Plaintiff recognizes this part of the rule also but doesn't explain how it applies. Doc. 21 at 3–4 ("Congress has authorized nationwide service of process in areas such as antitrust, securities, bankruptcy, and interpleader—this permits defendant to be served anywhere in the United States and provides personal jurisdiction." (quotation cleaned up)). Section 1983—alone—doesn't confer jurisdiction upon nationwide service of process. *Trujillo*, 465 F.3d at 1217. So, despite plaintiff citing Fed. R. Civ. P. 4(k)(1)(C), he has failed to allege facts that could chart the path to a finding of personal jurisdiction.

jurisdiction permitted by the Constitution of the United States. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op*, 17 F.3d 1302, 1305 (10th Cir. 1994); *Tomelleri v. MEDL Mobile, Inc.*, 657 F. App'x 793, 795 (10th Cir. 2016) ("The Kansas long-arm statute supports personal jurisdiction to the extent constitutionally permitted[.]"). So, it's unnecessary to conduct a separate personal jurisdiction analysis under Kansas law. The court proceeds instead directly to the due process inquiry. *Federated Rural Elec. Ins. Corp.*, 17 F.3d at 1305; *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (explaining that when a state's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first statutory inquiry effectively collapses into the second, constitutional, analysis" (quotation cleaned up)). Next up, then, is personal jurisdiction under the Due Process Clause.

## 2. Due Process

The due process analysis provides its own two-step inquiry. *First*, the court must determine "whether the nonresident defendant has minimum contacts with the forum state such that he should reasonably anticipate being haled into court there." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008) (internal quotation marks and citation omitted). *Second*, if defendants' actions establish such minimum contacts, the court then must decide "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and citations omitted).

### a. Minimum Contacts

The Due Process Clause permits personal jurisdiction over nonresident defendants so long as defendants purposefully have established "minimum contacts" with the forum state. *Burger King*, 471 U.S. at 474. The "minimum contacts" standard is satisfied by establishing either (1) specific jurisdiction or (2) general jurisdiction. *Rockwood Select Asset Fund XI (6)-1,*

*LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179 (10th Cir. 2014). A court may assert *specific* jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI Holdings*, 149 F.3d at 1090–91 (quoting *Burger King*, 471 U.S. at 472). Alternatively, if "a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state." *Id.* at 1091 (emphasis in original). Plaintiff doesn't specify whether he alleges specific or general personal jurisdiction. Either way, he's failed.

A court can exercise specific jurisdiction if: (1) the out-of-state defendant "purposefully directed its activities at residents of the forum state" and (2) the plaintiff's injuries "arose from those purposefully directed activities[.]" *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013). In any case, "the shared aim of [the] 'purposeful direction' doctrine . . . [is] to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 475).

The Supreme Court "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quotation cleaned up). "However significant the plaintiff's contacts with the forum," they aren't "decisive in determining whether the defendant's due process rights are violated." *Id.* at 285 (quotation cleaned up). And the analysis centers on "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (quotation cleaned up). Putting it another way, the plaintiff

can't serve as "the only link between the defendant and the forum." *Id.* Instead, defendants'

conduct "must form the necessary connection[.]" *Id.*

General jurisdiction, on the other hand, doesn't rely on case-specific contacts with the

forum state. Instead, it relies on defendants' contacts that are "continuous and systematic enough

that defendant could reasonably anticipate being haled into court in that forum." *Trierweiler v.*

*Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1543 (10th Cir. 1996) (quotation cleaned up).

Plaintiff here has failed to make a prima facie showing of either specific or general

jurisdiction. Plaintiff alleges no contacts among defendants and the state of Kansas. The few

facts he alleges reflect activities that occurred only in Missouri. *See* Doc. 1-2 at 3 (alleging

arrest, "violat[ion] while traveling in the State of Missouri[,]" and court appearances in Cass

County, Missouri); Doc. 1-5 at 1 (Notice of Dismissal of criminal charges in Cass County,

Missouri); *id.* at 2 (bond posted in Missouri). Plaintiff's residence in Kansas isn't enough. *See*

Doc. 1 at 1 (Compl. ¶ I.A.) (identifying plaintiff's address); *see also Kulko v. Superior Ct. of*

*Cal. In and For City and Cnty. of San Francisco*, 436 U.S. 84, 93 (1978) (concluding that

plaintiff hadn't established personal jurisdiction simply because plaintiff in an associated child

support action lived in forum state). After all, the minimum contacts inquiry focuses on

defendants' connection to the forum. *See Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the

only link between the defendant and the forum."). So, plaintiff has alleged no Kansas contacts

capable of satisfying his burden on specific jurisdiction. And, naturally, those nonexistent

contacts are far from sufficient to satisfy plaintiff's burden on general jurisdiction.

Failing entirely the minimum contacts prong of the due process inquiry, the court needn't

address the fair play or substantial justice prong. *See, e.g., Brackens v. Stewart*, No. 06-2241-

JWL, 2007 WL 734952, at *2 (D. Kan. Mar. 7, 2007).  Our court doesn't have personal jurisdiction over defendants.

## B.    Transfer or Dismiss without Prejudice

Because personal jurisdiction is missing, the court has two options:  (1) transfer the action to another jurisdiction "in the interests of justice" or (2) dismiss the action without prejudice.  *Trujillo*, 465 F.3d at 1222–23; *see also* 28 U.S.C. § 1631 ("Whenever . . . [the] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to [another court with jurisdiction.]").  The decision is discretionary, but the court must evaluate transfer on some level to avoid abusing its discretion.  *Trujillo*, 465 F.3d at 1222–23; *Driggers v. Clark*, 422 F. App'x 747, 750 (10th Cir. 2011) (explaining failure to consider possibility of transfer an abuse of discretion).  So, while the parties here don't request transfer, the court addresses whether doing so is in the interest of justice.

As a first step, the court must determine whether "the proposed transferee court has personal jurisdiction over the parties."  *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 793 n.16 (10th Cir. 1998).  When "an action is transferred for want of personal jurisdiction, the law of the transferee state controls."  *Id.* at 793.  The court evaluates a possible transfer to the Western District of Missouri since it encompasses Cass County—the apparent locus of most of plaintiff's allegations.  Missouri courts have jurisdiction over persons, "whether or not a citizen or resident of" Missouri, who commit "a tortious act within [the] state[,]" on causes of action arising from those acts.  Mo. Rev. Stat. § 506.500.[15]  All the conduct alleged by plaintiff's Complaint appears to have occurred in Missouri.  Plaintiff never mentions any other state.  So, the court is satisfied

---

[15]    Missouri also "permits service on resident defendants[,]" subjecting those defendants to personal jurisdiction in the state. *See State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 52 (Mo. 2017) (en banc).

that the Western District of Missouri would have personal jurisdiction over defendants—based on the allegations in the Complaint. The remaining question is whether transfer is proper.

The court must evaluate several factors to determine whether to transfer or dismiss: would the statute of limitations bar a newly filed action in the transferee court, are plaintiff's claims "likely to have merit," and whether plaintiff filed the action in good faith, not after he "either realized or should have realized that the forum in which he . . . filed was improper." *Trujillo*, 465 F.3d at 1223 n.16 (quotation cleaned up). And these factors aren't "necessarily exclusive." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 109 (10th Cir. 2012). Courts also may consider judicial economy. *Id.* And they may consider whether the parties requested a transfer or raised the issue in their briefing. *See Wingate v. Barkman Honey, LLC*, No. 19-4074-HLT, 2020 WL 362647, at *4 n.4 (D. Kan. Jan. 22, 2020). Here, the interest of justice favors dismissal, as explained below.

### 1.    Statute of Limitations

The first factor—the applicable statute of limitations—favors dismissal. If the statute of limitations would bar the re-filed action, "then it is in the interest of justice and 'particularly appropriate' to transfer." *Jenkins-Dyer v. Drayton*, No. 13-2489-JAR, 2014 WL 5307851, at *7 (D. Kan. Oct. 16, 2014) (quoting *Sinclair v. Kleindienst*, 711 F.2d 291, 294 (D.C. Cir. 1983)). Here though, the court struggles to pin down plaintiff's claims, which, in turn, leaves it to struggle to pin down when those claims accrued.

Recall the court's interpretation of plaintiff's claims under § 1983. *See above* § II.B. Congress didn't establish a statute of limitations for § 1983 claims. *Owens v. Okure*, 488 U.S. 235, 239 (1989). Instead, the appropriate limitations period is the personal injury statute of limitations for the state where the federal court sits. *Id.* at 239, 249–50; *Brown v. Unified Sch.*

*Dist 501, Topeka Pub. Schs.*, 465 F.3d 1184, 1188 (10th Cir. 2006) ("The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983.").[16]  If the court transferred this action to a federal court in Missouri, that court would apply Missouri's five-year limitations period.  *See* Mo. Rev. Stat. § 516.120(4); *Sulik v. Taney Cnty., Mo.*, 393 F.3d 765, 767 (8th Cir. 2005) (applying Missouri five-year statute of limitations to § 1983 claim).  That's the easy part.

Now, the hard part—when plaintiff's claims accrued.  The "accrual date of a § 1983 cause of action is a question of federal law[.]"  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  The general rule is that a cause of action accrues when it is "complete and present."  *Id.* at 388 (quotation cleaned up).  In a wrongful arrest case, that's when "the allegedly wrongful arrest occurred[.]"  *Id.*  But in a false imprisonment case, it's when "the alleged false imprisonment ends."  *Id.* at 389 (quotation cleaned up).[17]  Plaintiff appears to assert both claims.  *See* Doc. 1-2 at 3 (alleging "[u]njustified detainment on multiple occasions" with "[o]ne being the initial arrest").  Plaintiff also appears to argue some of the defendants "withheld the electronic correspondence" during state court proceedings.  *Id.*

---

[16]    In the past our court has evaluated this transfer-or-dismissal factor using Kansas's two-year personal injury statute of limitations for § 1983 claims.  *See Diaz-Oropeza v. Riverside Red X, Inc.*, No. 11-2012-JTM, 2011 WL 2580167, at *5 (D. Kan. June 28, 2011); *Crawley v. Gasaway*, No. 24-2021-JAR-ADM, 2024 WL 3718631, at *3 (D. Kan. May 1, 2024), *report and recommendation adopted*, 2024 WL 3271476 (D. Kan. July 2, 2024) (applying two-year statute of limitations despite recommending district judge transfer the case to the Western District of Missouri).  Here, though, the court believes the proper court applies the limitations period supplied by Missouri law.  *See Rodgers v. Fallin*, No. CIV-12-171-D, 2013 WL 149723, at *7 (W.D. Okla. Jan. 14, 2013) (applying limitations period potential transferee court would apply in § 1983 case).  After all, if plaintiff filed anew in a federal district court in Missouri, it would apply Missouri's statute of limitations—not Kansas's—to determine whether the suit was time-barred.  So, the court evaluates transfer using Missouri's statute of limitations.

[17]    The Supreme Court recognizes overlap between these two torts and has referred to them together as "false imprisonment" for purposes of a § 1983 statute of limitations.  *Wallace*, 549 U.S. at 388–89.

The court can identify just a few dates from plaintiff's Complaint and his attached documents. The earliest of those dates is 2017. *See* Doc. 1-2 at 6 (alleging January 20, 2017, as the "start" of the "Corporate 'State'" that "continu[ed] to mortgage war for more than five years in violation of Banking Act of 1864"). The other decipherable dates place accrual in 2023 and 2024. Doc. 1-5 at 2 (identifying plaintiff's next hearing in his criminal trespass case for May 16, 2023); *id.* at 1 (defendants dismissing charges on February 6, 2024).[18] Plaintiff's claims are up in the air, so the accrual dates for those claims are up in the air. The court isn't sure which, if any, of plaintiff's claims the statute of limitations would bar if he filed anew.

On one hand, if plaintiff's claims accrued in 2017, the statute of limitations for § 1983 claims in Missouri would've run fully in 2022. That's five years later. Mo. Rev. Stat. § 516.120(4). Plaintiff didn't file his Complaint in the District of Kansas until June 11, 2024—two years too late. *See* Doc. 1 at 1. The statute of limitations would bar these claims if transferred to the Western District of Missouri. They are time-barred already and would remain so upon transfer, as well. On the other hand, if plaintiff's claims accrued in or after 2023, the

---

[18]     Plaintiff attached his bond for his criminal trespass case. *See* Doc. 1-5 at 2. But the date on that document is obstructed. *See id.* The court can't identify that date, or the date of plaintiff's arrest. The court ordinarily would take judicial notice of the state court criminal record—sua sponte—to determine plaintiff's arrest date. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (recognizing "that a court may, Sua sponte, take judicial notice of . . . preceding records if called to the court's attention by the parties" and "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); *Warnick v. Cooley*, 895 F.3d 746, 754 n.6 (10th Cir. 2018) ("On review of a Rule 12(b)(6) motion, we consider the complaint as well as documents incorporated into the complaint by reference and matters of which a court may take judicial notice." (quotation cleaned up)); *Wei v. Univ. of Wyo. College of Health Sch. Pharmacy*, 759 F. App'x 735, 740 (10th Cir. 2019) ("Although here the district court gleaned the date it found relevant to for the limitations calculation by taking judicial notice of a filing . . . it was entitled to do so."). Plaintiff references his arrest and the criminal case in the Complaint. *See* Doc. 1-2 at 3–4. And he lists the case number. *Id.* at 4; Doc. 1-5 at 1. But the court can't find any case with that case number in the Missouri courts database. So, the court isn't certain when plaintiff's arrest occurred. The court thus must conduct its statute of limitations accrual analysis with the dates plaintiff provided.

statute of limitations wouldn't run fully until at least 2028. Plaintiff would have plenty of time to file a new action in federal court in Missouri before the statute of limitations expires.

Either way the court reads plaintiff's Complaint and attached documents, the statute of limitations favors dismissal. It isn't "in the interest of justice" to transfer an already time-barred case, or alternatively, a case that could be filed anew without running afoul of the statute of limitations. *See Trujillo*, 465 F.3d at 1222–23.

This conclusion wouldn't prevent plaintiff, however, from filing anew in Missouri's federal court. And it wouldn't prevent that court from addressing the limitations issue on allegations that plaintiff's new filing might enhance. Next up: a glimpse at the merits.

### 2.    Merits

"[A] court is authorized to consider the consequences of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed." *Grynberg*, 490 F. App'x at 108 (quoting *Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000)). When a case is transferred under § 1631, the transferee court applies its own law. *Viernow*, 157 F.3d at 793 ("[A]fter transfer for lack of jurisdiction, the action . . . shall proceed as if it had been filed in . . . the court to which it is transferred." (internal quotation marks and citation omitted)); *Sec. Ins. Co. of Hartford v. Clovis Ins. Ctr., Inc.*, No. 04-1246-JB/ACT, 2006 WL 8444163, at *7 (D.N.M. May 10, 2006) ("Moreover, § 1631 makes it clear that whenever an action is transferred for want of personal jurisdiction, the law of the transferee state controls."). Though the parties' briefs didn't address transfer, defendants' arguments supporting their Rule 12(b)(6) motion provide a useful peek at the merits. Below, the court takes this quick peek at sovereign and prosecutorial immunity. And it concludes that those defenses likely doom plaintiff's claims.

20

### a.    Sovereign Immunity

If sovereign immunity applies, plaintiff isn't likely to succeed on the merits of his claims against defendants in their official capacities. "The Eleventh Amendment bars suits for damages and other forms of relief against state defendants acting in their official capacities." *Buchheit*, 705 F.3d at 1159; *Kentucky*, 473 U.S. at 169.

Here, plaintiff seeks only damages.[19]  *See* Doc. 1 at 5 (Compl. ¶ IV).  And he seeks them from state officials—a Cass County, Missouri, Prosecutor and Assistant Prosecutor. *Id.* at 2 (Compl. ¶ I.B.); *Sup. Ct. of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736–37 (1980) (noting the *Ex parte Young* exception could apply to prosecutors as state officers in § 1983 injunctive suits); *State v. Goree*, 546 S.W.2d 785, 788 (Mo. Ct. App. 1977) (concluding that Missouri prosecutors represent the state "for the prosecution of persons accused of crimes"). At bottom, sovereign immunity likely applies, which means plaintiff is unlikely to succeed on the merits of his official capacity claims.

### b.    Absolute Prosecutorial Immunity

And plaintiff's individual capacity claims likely will suffer a similar fate.  A cursory review shows that absolute prosecutorial immunity likely bars them.  "Prosecutorial immunity bars claims for damages against a prosecutor sued in her individual capacity." *Blair v. Osborne*, 777 F. App'x 926, 929 (10th Cir. 2019); *Lewis v. Clarke*, 581 U.S. 155, 163 (2017) ("An officer

---

[19]    Eleventh Amendment immunity doesn't apply when state officials are sued for prospective relief. *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008) (describing the *Ex parte Young* exception); *Minn. RFL Republican Farmer Labor Caucus v. Moriarty*, 108 F.4th 1035, 1037–38 (8th Cir. 2024) (same); *Ex parte Young*, 209 U.S. 123, 155–56 (1908).  Plaintiff in response makes something of a throw-away reference to injunctive relief.  He writes:  "The vernacular distinction between venue and jurisdiction is ultimately at question in as such makes it the overall reason for this injunction." Doc. 21 at 2.  But he never requests an injunction in his request for relief in the Complaint, or otherwise requests injunctive relief.  *See* Doc. 1 at 5 (Compl. ¶ IV).  So, the court concludes plaintiff only seeks damages.

in an individual-capacity action . . . may be able to assert *personal* immunity defenses, such as

. . . absolute prosecutorial immunity[.]" (emphasis in original)).  Prosecutors benefit from

absolute immunity for activities "intimately associated with the judicial phase of the criminal

process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Sample v. City of Woodbury*, 836 F.3d

913, 916 (8th Cir. 2016) (finding absolute immunity protects prosecutors in initiating and

presenting criminal cases when that conduct is "intimately associated with the judicial phase"

(quotation cleaned up)); *Mink v. Suthers*, 482 F.3d 1244, 1259 (10th Cir. 2007) (focusing

absolute immunity on prosecutor's role as an advocate, not "administrator or investigative

officer" (quotation cleaned up)).

　　　　Absolute immunity extends to preparing and filing criminal charges, *Kalina v. Fletcher*,

522 U.S. 118, 129 (1997), and likewise to the decision to dismiss charges, *Brodnicki v. City of

Omaha*, 75 F.3d 1261, 1268 (8th Cir. 1996) ("The decisions relating to the initiation and

dismissal of cases are at the very heart of a prosecutor's function as an advocate for the state, and

absolute immunity thus attaches to those decisions."); *Joseph v. Yocum*, 53 F. App'x 1, 3 (10th

Cir. 2002) ("[A] prosecutor's decision as to when to dismiss charges is entitled to absolute

prosecutorial immunity[.]").[20]

　　　　Defendants assert that plaintiff hasn't alleged any conduct "outside the course of

[defendants'] roles as advocates for the state" of Missouri.  Doc. 15 at 9.  Plaintiff responds,

urging the court not to apply prosecutorial immunity because it would undercut the notion of

---

[20]　　　Absolute prosecutorial immunity also likely applies to plaintiff's allegations that defendants coerced him to plead "not guilty."  *See* Doc. 1-2 at 3.  Plea negotiations are an activity "warrant[ing] absolute immunity[.]"  *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987) (citing out of circuit cases upholding prosecutorial immunity despite alleged misrepresentations in plea bargaining and efforts to intimidate a plaintiff into dismissing a suit in exchange for dropped criminal charges), *overruled in part on other grounds by Burns v. Reed*, 500 U.S. 478 (1991).  And "allegations of [prosecutors'] abusive, illegal or unethical conduct must fail if they represent an attempt to impose damages liability for acts encompassed in the initiation or conduct of adversarial proceedings[.]"  *Id.*

equality underpinning the United States Constitution and Declaration of Independence. *See* Doc. 21 at 6–7. Plaintiff never challenges that the dispute here is "squarely within [defendants'] duty as prosecutors[,]" which defendants ably point out. Doc. 27 at 3. Defendants have the better of these arguments. And, the court finds, likely would succeed on prosecutorial immunity grounds if the case were transferred.

Plaintiff's sparse factual allegations likely sink his claims here. Plaintiff never clarifies defendants' alleged conduct. *See* Doc. 15 at 9 (defendants arguing prosecutorial immunity applies even though "the *pro se* Complaint fails to assert any specific recognizable allegations"). Plaintiff doesn't argue that he's challenging defendants' conduct during the investigative or administrative phase, instead of the judicial one. *See generally* Doc. 1; Doc. 1-2. Defendants suggest, albeit in sweeping fashion, that plaintiff "failed to allege that [d]efendants engaged in any conduct outside the course of their roles as advocates for the state." Doc. 15 at 9. And plaintiff's allegations reflect as much. *See* Doc. 1-2 at 3 (alleging defendants "coerced [his] plea of not guilty" and committed "legal abuse" by dismissing his trespass charges). In response, plaintiff doesn't argue otherwise. *See* Doc. 21 at 6–7.

Based on the allegations the court can glean from the Complaint and plaintiff's failure to refute defendants' immunity arguments—absolute immunity likely applies and bars plaintiff's claims against these defendants in their individual capacities. Accordingly, plaintiff is unlikely to succeed on the merits of these individual capacity claims if the case is transferred to the Western District of Missouri.[21]

---

[21] Note that in our Circuit, the interests of justice don't require dismissal only if the case is "clearly doomed." *Grynberg*, 490 F. App'x at 108 n.9. Instead, the "touchstone is conserving judicial resources that would be wastefully expended by transferring cases that are *likely* without merit." *Id.* (emphasis in original). That's the case here.

The second factor thus favors dismissal for both the official and individual capacity claims.  Now, the court evaluates whether plaintiff filed in the District of Kansas in good faith.

### 3.    Good Faith

The final factor from *Trujillo* in the dismiss-or-transfer analysis is whether plaintiff knew or should have known the forum was improper.  *Trujillo*, 465 F.3d at 1223 n.16.  Here, it's unclear whether plaintiff should've known that Kansas wasn't the proper jurisdiction.  Plaintiff recognizes that defendants must have minimum contacts with the forum state.  *See* Doc. 21 at 4. But plaintiff also affirms his belief that personal jurisdiction is proper in our court against these defendants, based on his misinterpretation of Fed. R. Civ. P. 4(k).  *See id.* at 3–4 (invoking the 100-mile bulge rule in Fed. R. Civ. P. 4(k)(1)(B) and asserting the "venue location is well decided and all well within my right").  So, it appears that plaintiff may have thought he could sue defendants here.  On the other hand, plaintiff doesn't allege any facts other than misconduct during his arrest and court proceedings, all of which appear to have occurred in Missouri.  *See* Doc. 1-2 at 3.  Another court concluded that pro se plaintiffs should realize their selected forum is the wrong place to sue defendants "without any known connection" to the forum state. *Jackson v. Cavalier Rental Car Co.*, No. CIV-19-197-D, 2019 WL 8106208, at *5 (W.D. Okla May 1, 2019), *report and recommendation adopted*, 2020 WL 963379 (W.D. Okla. Feb. 27, 2020).  This court won't go that far here—at least not on the facts the Complaint alleges.  The court thus concludes the third factor is inconclusive under these circumstances.

### 4.    Other Factors

The two miscellaneous factors—judicial economy and the requests of the parties—also favor dismissal.  Judicial economy doesn't demand transfer here.  *See Grynberg*, 490 F. App'x at 109.  In fact, judicial economy encourages dismissal.  The court stayed all discovery until after

deciding this Motion to Dismiss.  *See* Doc. 34.  So, the parties wouldn't undergo duplicative

discovery if plaintiff filed anew in the Western District of Missouri.  *See Grynberg*, 490 F.

App'x at 109 (recognizing district court's conclusion that dismissal was proper because parties

would repeat "little pleading and no discovery" if new action commenced).  And, as the court

explained above, it's likely that some of plaintiff's claims are barred by Missouri's statute of

limitations.  *See above* § III.B.1.  "'[I]t is a waste of judicial resources to require the transfer of

frivolous, time-barred cases.'"  *Grynberg*, 490 F. App'x at 109 n.10 (quoting *In re Cline*, 531

F.3d 1249, 1252 (10th Cir. 2008)).  Judicial economy is best served by dismissing this likely

unmeritorious, and possibly time-barred, early-stage case.

And neither party seeks transfer, which weighs against doing so.  *Wingate*, 2020 WL

362647, at *4 n.4.  Unsurprisingly, defendants ask the court to dismiss the case whole cloth.

Doc. 15 at 2, 7, 10.  Plaintiff just doubles down on his position that personal jurisdiction exists.

Doc. 21 at 3–5.  Plaintiff proceeds pro se, so the court doesn't place too much stock in his failure

to request transfer.  But in view of the other factors, this one also supports dismissal.

On balance, the factors favor dismissal, not transfer.  So, the court exercises its discretion

to dismiss—without prejudice—plaintiff's claims against defendants for lack of personal

jurisdiction.

## IV.    Conclusion

The court doesn't have personal jurisdiction over defendants.  *See above* § III.A.  And the

Tenth Circuit factors favor dismissal without prejudice.  *See above* § III.B.  The Missouri statute

of limitations applied to § 1983 claims appears to bar already some of plaintiff's claims.  *See*

*above* § III.B.1.  Transfer can't help plaintiff's problems with those claims.  And that statute of

limitations may not bar others aspects of plaintiff's claims if he filed them anew in federal court

in Missouri. *See above id.* So, the statute of limitations doesn't favor transfer. Sovereign immunity likely bars plaintiff's claims against defendants in their official capacities. *See above* § III.B.2.a. And absolute prosecutorial immunity likely bars plaintiff's claims against defendants in their individual capacities. *See above* § III.B.2.b. Peeking into the merits, plaintiff isn't likely to succeed on his claims. Ultimately, a transfer doesn't serve the interests of justice. The court thus grants defendants' Motion to Dismiss (Doc. 14) and dismisses plaintiff's claims against defendants Butler and Gieseke without prejudice.[22]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss for Failure to State a Claim (Doc. 14) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's Motion to Strike and Response (Doc. 21) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Motion to Strike Plaintiff's Surreply (Doc. 29) is granted.

**IT IS SO ORDERED.**

**Dated this 13th day of December, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

[22] Having dismissed for lack of personal jurisdiction, the court needn't address defendants' arguments that plaintiff has failed to comply with Rule 8 and that the District of Kansas is an improper venue.